Will you please call the next case? Case number H-3339, Vines v. Village of Flossmoor and Flossmoor Library. Okay, I'd like the attorneys who are representing the parties on this case to step up to the podium. I want you to tell me your name, who you represent, and approximately how long the argument will take. Let's start with the appellants. Good morning, Counsel. Good morning, Your Honor. Larry Rogers, Jr. and Jonathan Thomas for the plaintiff appellant. We expect the argument to take about 20 minutes initially, and we would hope to have an additional 10 minutes for rebuttal. Okay, very good, Mr. Rock. Okay, Counsel. Good morning. Good morning, John. Ianbert, Y-A-M-B-E-R-T for the appellee, Village of Flossmoor. Okay, very good. Counsel, Mr. Ianbert. Good morning, Your Honor. Ana Maria Downs. I represent the defendant appellee, Flossmoor Library. Okay. Are the two of you going to devise a time? We are. Okay. How much time will each take? The question of the court is, are they going to have 20 minutes for their main argument initially? As you can see, this is set at 11 o'clock. We're not going to rust the lawyers with their arguments. My intent is to take less than a half of the time, so why don't we do this at around 7 minutes? I'll try and sit down. Okay, very good. I'm not saying they're bad. Nobody's ever done bad when they say they're going to do it. Now I'm under the clock. And Ms. Downs, you need 13 minutes? I would take the remainder of that time. Okay, very good. Which order are you going to argue in? The village of Flossmoor would like to go first, Your Honor. Okay, very good. That's fine. Thank you. Okay, who's going to argue for the appellants? Mr. Rogers. Mr. Rogers, proceed. May it please the court, Justice Mason, Justice Neville, Justice Hyman. Fourteen-year-old Serge Vines was denied his day in court when the trial court did something no other trial court or appellate court has acknowledged to be the case. The trial court in this instance deemed a library, some would say the antithesis of recreational property, to be immune from liability based upon it being recreational use property. To even further respectfully contravene standing Illinois law, the court deemed a bent, damaged, defective, and misplaced ventilation grate over a ventilation vault to be integral to the supposed recreational use of a library. Again, something that no Illinois case law has established. Before we get to that, there is an issue with regard to jurisdiction that was brought up. And in this case, the appeal should have been filed on December 14th, is that right? That is correct, Your Honor. And then nothing happened until the appeal actually was filed on December 21st. And then the next thing that occurred was a 303-D motion, which was filed, if I'm not mistaken, on January 17th. It was actually filed January 20th. January 17th was a motion to dismiss the appeal. To dismiss, right. It was a motion to dismiss. Right. And then you filed your motion, 303-D, on January 20th. The 17th is more than 30 days after December 14th. So my question is, how do we have jurisdiction when that extra period of time has expired? It's our position, Your Honor, that the issue of this Court's jurisdiction has been fully briefed and decided, both on the motions to dismiss filed by each of the affiliates, as well as on plaintiff's motion to amend. The Supreme Court tells us, Mr. Rogers, we have a duty to examine our jurisdiction in every case. Absolutely, Your Honor. And I am not discounting that reality. I'm simply saying that that issue was fully briefed and has been decided. And the cases that I would point to in support of that position are Picker v. New York, 391 Illinois 377. In that case where the issue of jurisdiction has been decided, I'm sorry, is being deferred and taken up with the appeal, it's expressly stated in the opinion. And in that case, the Court stated the motion and objections to jurisdiction thereto were taken with the case. That's different than the situation we have here, in that the 303D was filed after the 30 days. So you're correct, there was a ruling by a panel, not this panel, but a different panel. But if that ruling is incorrect, we still have a duty to look at our jurisdiction and look at that ruling, because that ruling, there was no discussion. It was just denied. There was no opinion. It was just a ruling. It was just a ruling. But the issue had been, again, fully briefed. It was fully briefed, but if it's wrongly decided, the Supreme Court has said, we have that jurisdiction. It's something we cannot ignore. Sure. So is there, other than your argument that we should follow that because it was decided, do you have any other argument that you'd like to bring up? We do, Your Honor. The People v. Brown case, 54-02-25, I think is directly on point in this respect. First off, in that case, the notice of appeal was filed 46 days after the judgment, not within the 30-day period of time. Right, but that would be, here, filed outside the 60. Well, with respect to the 60, I'm trying to just make sure. No, that case is more analogous to this case because we actually filed our notice of appeal on December 21st, so within the second 30-day period. That was similarly done in the People v. Brown case. They filed a notice of appeal 46 days after the judgment instead of 30 days after the judgment. The criticism there was that they did not file a notice for leave to file a late notice of appeal, which was the issue here. We didn't have a motion for leave to file a late notice of appeal. So in that case, and I want to quote it, the court stated, in our opinion, the ground relied upon by the appellate court to distinguish these cases, that being that in the present case, no petition for leave to file a late notice of appeal had been filed, that unduly emphasizes formality at the expense of substance. And that's where we're taking the position here. The notice of appeal was filed on December 21st, not December 14th. That's an acknowledged error. The reason it was not timely filed was a docketing error, which is well documented in the case law as a reasonable excuse. Has the People v. Brown ever been cited in a civil case to excuse the grace period, the filing the motion for leave to file a late notice of appeal within 30 days? Not that I found, Your Honor. However, I saw no distinction in the law between its application in a criminal setting versus a civil setting. The same issue arises as to whether the notice of appeal was timely. So you're asking this court to treat your notice of appeal as a late notice of appeal? Yes. I'm saying that once we were alerted to the error, we acted expediently. So since you filed it within that 30-day period, you feel that this court has jurisdiction. We do. We felt that this court can exercise jurisdiction with a timely filing within the first 30-day period or the second 30-day period. We filed our notice of appeal within the second 30-day period, and then we filed a motion to amend it to incorporate a one-page request for leave to file it. That was our motion to amend, which was granted by a different panel of this court. And again, the Supreme Court has deemed the filing of that request to be form over substance. And here we're talking about a 14-year-old boy who, quite frankly, his statute of limitations to today's date has not expired. He's still a minor. He's 17 years old even today. So respectfully, substantively, the issue of his claim and his denial of the opportunity to present his case before a jury through application of the Tort Immunity Act to a library is really a substantive undermining of what we think precedent establishes in Illinois case law. Why don't you proceed with the remainder of your argument? Thank you, Your Honor. With respect to this claim, again, there's no Illinois case that has determined a library to be recreational use property. And even more so, there is absolutely no Illinois case that determines a grate that covers a ventilation vault to be integral to some recreational use. But doesn't the library argue that they used it for recreational purposes? The library cites to a couple of what they cite to the use of movies and some activities that take place on the property. But just because under the case law that you do some recreational activity on property, that does not convert the property to wholesale recreational use property. That's not the character of the property.  And I would point to the case of Fennerty v. City of Chicago, 2015, Appellate 1st District, 140679 is the Westlaw site. In that opinion, Justice Flanagan deemed a midway between two boulevards to be recreational use property because there was testimony that some people play in the area and walk dogs and there was other contradicting testimony. And the appellate court reversed that finding just a year before this ruling and deemed that to be a question of fact that deserved to go to a jury. I'd also specifically point to the case of Johnson v. City of Chicago, 3470638, another 1st District 2004 case that specifically involved a library and a gate and fence outside the library. In that case, it was deemed to be reversible error where the trial court deemed that gate to be integral to recreational use property. And the appellate court specifically said we are not deciding whether a library is or is not recreational property. And I would suggest a library, if anything, is more akin to schools, which the case law talks about distinction. Schools are educational properties and they don't deem every other piece of contiguous property or sidewalk or gymnasium even to be integral to some recreational use. Those are issues that are deemed to be questions of fact. In Johnson, the court specifically said that the gate and fence was so incidental to the use of the library, that Section 3-106 did not apply at all. So respectfully, we think Judge Flanagan misapplied 3-106 by one, determining that a library as a matter of law was recreational use property. And secondly, that this gate outside the library was integral to some recreational use of that property. So you didn't cross-move. There was no cross-motion for summary judgment by the plaintiffs to say rule as a matter of law that this is not recreational use property and that this gate is not integral to the use of the property in that manner. No. We just said it. You're saying these are questions of fact. We were saying these were questions of fact. And as a matter of law, there was no basis in the case law or the statute to say that the library or the gate were recreational use or integral to recreational use property. Secondly, Your Honor, the statute, 3-106, specifically excludes willful and wanton conduct from being conduct that is immune. We initially pled willful and wanton conduct early on in the case. There was a motion to dismiss saying that there weren't enough facts. So we withdrew that. It was not ruled on as a matter of law. We just withdrew it to conduct some discovery. We then proceeded with the case. They filed their motions on that complaint. We presented an amended pleading that included willful and wanton allegations as well as recepts or loquitur allegations. The reasons we did that were twofold. The recepts or loquitur allegations were based upon the testimony of the maintenance gentleman that he had exclusive control over this grate and this ventilation vault. He was the only person who would access it, who would clean it. He also testified to the extent he had to go to to remove it. Since you mentioned him, he is employed by the library. Yes. But he was paid. Am I correct? He was paid by the village. There's testimony indicating he was paid by the village, yes. But he would describe the fact that he would have to use mechanical devices, ropes and so forth, to lift this very heavy grate off of its sitting position to access the vault to clean it out. He said he was the only person that did it. He acknowledged this. And he hadn't done it for a couple of years because he was out for several months at the time. Correct. He was off as of December of 13. This event happened in March of 14. So we think that the evidence supported a racist or local terror allegation that they had exclusive control over this. There's absolutely no evidence that anyone else ever accessed this. Despite that fact, Judge Flanagan references in her opinion the fact that anyone could have walked along and moved this 100-plus pound grate when there's absolutely no evidence of that fact. And the evidence perfectly contradicts that because of all of the measures it took to remove the grate. When you talk about two defects, you say that some of the flanges were bent and the grate was malpositioned. I see evidence of Mr. Fiorenzo being aware of the bent flanges. I don't see any reference to evidence of anyone being aware that the grate was malpositioned. The only evidence we have of the grate, I'm sorry, not the only, but the significant and critical evidence we have of the malpositioning of the grate is from the two flanges. That day. Correct. So what evidence do we have? You've got, for your willful and wanton, you've got to show that there was actual or constructive notice and that they didn't do anything about it. So you've got the bent flanges, but I don't see anything about the malpositioning. The distinction we believe this case presents that's supported by the case law is when the employee causes the malpositioning. Based on the testimony that Mr. Fiorenzo was the only person who would relocate and move this grate and the steps he had to take to do it and the fact that it was positioned such that the kids saw that it was bent into, it was malpositioned, that's a reasonable inference can be made that he was the one to malposition it. There's no testimony of anyone else ever touching the grate other than him. And he testified under oath that the only way he could see this grate falling was if it was malpositioned. That's his own admission under oath. Is it correct that the village or the library had a duty to inspect that grate? And when was the last time they inspected it? Because the maintenance person was ill, correct? The maintenance person was ill as of December of 13, but they maintained the grounds throughout the time of his illness as well as up to his illness. And notice I said, did they have a duty to inspect it? Absolutely. When was the last time it was inspected based on the evidence in the record? They didn't have inspection records specifically for the grate. They would simply describe walking the grounds and looking in the areas. And we believe the case law establishes that they had a duty to identify identifiable problems on their property. And there are a couple of cases that talk about that. How does the, after the fact, changes that were made to the grate, you say were done at the behest of the village and not the library, how does that figure into? Sure. With respect to the village of Flossmoor, after this incident, they revamped and changed the way in which the grates were secured. Previously there were three grates. Two of them were tack welded and secured so that they could not fall. One, the one that Sellers Vines fell on, was simply positioned, which is what led to it being malpositioned. After this incident, the village changed the system so that even the grate that allowed access was bolted and you had to mechanically remove it through tools. So that goes to the issue of who had control, which the village of Flossmoor had that control, implemented that change, and it also goes to the feasibility of securing it in a more appropriate fashion before this incident. If you take the same testimony and they come to a completely different conclusion. Which at a minimum leads to a question of fact on the point. Yes. If you can take the same set of facts and it leads to two separate conclusions, then there's a question of fact on the point and summary judgment should be denied. So again, we think Judge Flanagan respectfully erred when she deemed as a matter of law that the conduct, that there was no constructive or actual notice as a matter of law. When again, there's evidence that Mr. Fiorenza himself caused the problem and there's no evidence of anyone else ever having any access to this particular grade system and removing it. I sort of touched on answering Justice Hyman's question, the issue of duty with the village of Flossmoor. Issues of whether conduct rises, I do want to reference the case of Sullivan v. City of Hillsborough. That case involved a plaintiff who was injured when she was water skiing in an area that had been provided by the park, by the city, and she struck a submerged pipe that had not been identified previously. The court held that the jury could find the city's failure to act to prevent that pipe from being present and causing a risk of harm and also its inability and its failure to warn the plaintiff of the dangerous condition to be sufficient evidence to constitute worthwhile conduct. Here we have a grade that is malpositioned and bent, a grade that Mr. Fiorenza says he knew about, a grade that his superior, Ms. Mellon, said that if she knew about it, she would have had it repaired or replaced because of the risk of falling. That being totally ignored, left in place when they know the kids periodically stand on them to get warm in the wintertime, and when we see evidence that it's not positioned properly. We think at a minimum that creates a question of fact that should be allowed to present to a jury. This 14-year-old boy leaves the library where we hauled one of the beef only because they closed the doors at 5 o'clock and his ride hasn't arrived. And he's standing there to be warned and unbeknownst to him, this grade, which is meant to hold even an adult, according to Mr. Fiorenza, collapses underneath him. His friends saw that it was not positioned properly and the flanges he acknowledges were bent. How could they possibly not have a duty to maintain that in a safe and secure fashion? And respectfully, we think that Judge Flanagan committed reversible error in deeming as a matter of law the library, again, to be recreational use property, the grade to be integral to use of recreational property, that under no set of circumstances could this arise to the level of willful and wanton conduct, not even allowing us to amend our pleading to allege willful and wanton conduct. And then finally, ruling as a matter of law, there's no constructive notice or actual notice when we have evidence that the very employee actually probably did this. Those respectfully, we think, warrant reversal of this case. You stand on your brief with respect to your other arguments, Mr. Rogers? I do, Your Honor. Okay. I think we'd better approach my time. May I proceed on behalf of the village? You may, and given the fact that Mr. Rogers went over a little counsel, we're not going to dock you if you go over. So please proceed. I told the panel seven minutes. Let's see if I can do that. We're not holding you to it. Proceed with the argument. To address one thing that probably isn't important, but Justice Hyman brings it up, and it does irk me to say that Terry Fioranza gets paid by the village. His testimony, I just want to read it to you. Page seven. Who are you employed by? Who are you employed by currently? Flossmoor Library. Page ten. The payer of the check, you believe to be the village of Flossmoor? I don't know for a fact. I have never looked at it that close. That's not saying he's paid by the village. It's like saying that both defense counsel come from the same insurance company. Let's be a little more careful with the facts on that. And the head library referred to him as my employee. One of seven full-time employees. I don't like to read things to the panel, but a couple things I am going to read today. This is from their brief. Terry Fioranzo, a library employee, maintained exclusive control of the maintenance of the library grounds, including the metal grate. Page four of their brief. Today they say he's the one that malpositioned it. I know you can plead in the alternative. Can you make arguments to the appellate court in the alternative on facts? That's in their brief. And the plaintiff sought to add the raised hips account, which means exclusive control. And that is an allegation they were seeking to add the library for, which is a separate public entity. Raised hips that they didn't seek to add it against the village. Illinois Constitution, Article 7, Section 10. Units of local government and school districts may contract or otherwise associate with themselves. And we have that. And then we have the Intergovernmental Cooperation Act, 5 ILCS 220-5. Such contract shall set forth the purpose, powers, rights, objectives, and responsibilities of the contracting parties. Specifically, the intergovernmental agreement is authorized by the Constitution and our legislature. The contract, I mean the intergovernmental agreement, the library shall be responsible for and make and control all repairs, rehabilitation, and maintenance of the building and its components. What's your response to the after the accident solution? Absolutely. I'm glad you asked that. Because again, if the accident wasn't there, if the fire chief, Keith Dam, whose only inspections were fire inspections to walk and look at the alarms and the wiring for those things, incidentally he walked over the grates, which sort of means, gee, if he noticed the grates were out of place, probably would have said something. I can see that. He's a safe guy. But it's not, he doesn't have a duty to do that. But you know of an assistant fire chief, if he saw the grates, that's another reason to think we don't have prior notice of those things. But to answer your question specifically, it couldn't be more clear in his deposition. You read his deposition. Did you have authority to do this before this accident? The answer was no. It was one word, no. They worked together with the library after the accident to formulate the solution, and he knows how to do it, so he took it upon himself to do it. Does that mean they're exercising control before? Absolutely not, and it's a post-accident remedial measure. I don't know how to make it more clear. His testimony was, did you have authority to do that before the accident? One word, no. I don't know how more clear it can be on that. In the record, isn't there evidence that the village had insurance policy with regard to the library? No. That's Hartford Insurance. I'm their governmental risk management agent. The representative is here today. They said that in the brief. I don't know where it comes from. It's just simply not true. They have a commercial policy. They're a separate taxing authority. They're a separate governmental entity. You're talking about the village. No, I'm talking about the village and the library. They're Hartford. I'm their governmental crew. Asking who has insurance. Hartford, their governmental risk management agency. But does that policy, the intergovernmental policy for the village, cover the library? That's the point they're making. The answer is I don't know, but I'm going to answer it this way. If it does, it would be over their coverage, I would guess. But I don't know that, sir. I wasn't prepared to answer that question. But we're a completely separate policy. I honestly don't know if the library is even covered under it. It may not be. When you say over, does that mean excess coverage? It might be excess, but I don't take that because I don't know. It never came up as an issue. I've never really argued about who has insurance, but it's not admissible in these things. But we're a separate council. We're separate. Here. The Flossmoor library, a unit of local government that's right in the agreement. They're separate from the village of Flossmoor. Do we cooperate with each other? Of course we do. Just like Hart Districts cooperate with each other. I've been close to my seven minutes. If you're going to make a liar out of me, come under it by about two minutes. I want to address briefly the immunities. 3102. The people that were the foes were Megan Milne, Terry Fioranzo, Joe Veal, the security guard, Keith Dan from the village, the assistant fire chief, two paramedics, two police officers, Selwyn Vines, his parents, and the two boys that were also on the grid. Here's my rhetorical question. Where is their notice of an unreasonably dangerous condition to get it done by 3-102 of the Tort Immunity Act? Rhetorical question for the panel. How long was that great malposition? If you don't know, I respectfully state that 3-102 applies. 3-103, the architectural drawings which are attached to the deposition of Keith Dan, and you can affirm on anything in the record, they were approved. There were architectural seals on them. They were approved by the building commission. Their conformity was built to basic building code. When built, 3-103 applies. This isn't, Mr. Amber, a design defect, an alleged design defect. But it's approved. So they're alleging it became malpositioned somehow. So I take that, that they're alleging it wasn't built in conformity with some type of code. Well, that's not the allegation. This isn't a design defect. You didn't design the building or the grate properly. It's that somebody moved it and it wasn't stable. Okay. That's 3-103. I agree with that. That's not the big portion of the decision here. And it certainly wasn't what Judge Flanagan relied upon. I concede that. But I would like to address 3-106, the recreational immunity, where you look at the overall character of the property for a second. Because here's the last point that I want to make, and I want to make this as clear as I can to the appellate court, and then I'm going to ask the appellate court to do something. They tried or filed a motion to file a third amended complaint. And even, and that adds the race ifs account. And it also adds the willful and wanton counts. You have 3-106 immunity unless there's a willful and wanton allegation that's provable that you can go forward on. Currently under the complaint that's been dismissed, motion for summary judgment, there wasn't a willful and wanton count. If you look at their allegations of willful and wanton conduct and their allegations of negligence, they're the mere allegations, M-I-R-R-O-R, they're mere allegations. They're not alleging willful and wanton conduct, but just putting the words willful and wanton in front of them. And as you know, and I would cite to the court, Winfrey v. Chicago Park District, 274 Gilnway Appellate 3rd, 939, you can't do that. You have to actually allege that the behavior rises to reckless disregard for the safety of others or intentional disregard, and as Judge Flanagan pointed out, we don't even have notice here, so it's not going to rise to willful and wanton conduct. So with all due respect to the appellant, what they seek to add by the third amendment complaint against the library, more so than me, still isn't going to correct the error in this record, which is that there's no prior notice of anything. So the net result is on behalf of the village, we have the intergovernmental agreement which is authorized by the Constitution and the statutes of the state that allow them to take the responsibility for maintaining the grounds. The evidence was that they do maintain the grounds, that the village does not, except for the parkway trees and the parking lot. There's no 3-102 notice to us under the Tour Community Act, and under the recreational immunity that would also apply to us also. A few more minutes and seven minutes. Any questions? Thank you for your time. Mr. Gale, thank you very much. Good morning again, Ms. Stout. Good morning. Please proceed. Good morning to the panel. Good morning, counsel. May it please the Court. On the issue of jurisdiction, I agree with the panel that as the deciding panel for this particular appeal, it first has a duty under the law to determine does it have jurisdiction to hear and consider the appeal, and if it does not, under the law, it is required to dismiss it. The appropriate rules triggering jurisdiction are Rule 303A and Rule 303D. There is no dispute in this case. There's evidence of record that under 303A, there was no timely filing of a notice of appeal. The filing of a notice of appeal seven days after the deadline did not qualify and did not satisfy 303A. The option left, I think they call it the safety valve in the committee comments, to 303D is the motion. It's a motion asking the Court, here's the good cause, here's what happened. We didn't file or we didn't file on time. Please accept a late notice of appeal. And what do you make of Mr. Rogers' citation to People v. Brown? I don't think the case is applicable in a civil case, and likewise here there is no actual motion, the 303D motion filed. What he filed was a motion to amend, and it asked the other panel to do one or two things. One, let my notice of appeal stand while it's late. So that doesn't give any relief. And secondly, they asked, well, change my late notice of filing into a 303D motion. If the Court allows jurisdiction in this case, what it is going to do is eviscerate Rule 303. The LA Supreme Court has already provided that safety valve, and it specifically says not only do you have to file the motion to show a good cause, but it has to be in that 30 days after the expiration of the initial deadline. That was not accomplished here. We've cited a couple of cases, Your Honor, in our section on jurisdiction. Pardon me. Garner v. Walsh and Josh Tunker v. Thomas Painter and Daniel Conway. In both those cases, specific to this case, on all fours, court determined it had no jurisdiction in dismissed appeal because the notice of appeal was filed late and without leave of court, as here, and that 303D motion for leave to file the notice of appeal was also untimely filed. So this Court does not have any rule. There's no Supreme Court rule. There's no common law saying that the Apollo Court can circumvent the Illinois Supreme Court's rules on triggering jurisdiction by allowing somebody to just amend any filing that they make to call it a 303D motion. If we do that, the Court loses its integrity in terms of its Apollo jurisdiction. The Illinois Supreme Court has stated that and has reminded all reviewing courts that it is required to honor those rules. Absent following those rules, there is no teeth to the Apollo jurisdiction process. The suggestion here today that the underlying personal injury statute limitation is not expired does not play a role in the analysis of Apollo jurisdiction. It's not set forth in Rule 303, and there is no case authority from the Illinois Supreme Court or the Apollo Court stating that that should play a role in deciding whether or not to allow jurisdiction in this case. We raised multiple issues in our Apollo brief and on the motion for summary judgment. I'm going to address here Rules 3-106 and the issue of notice specifically, unless your honors have questions on the other issues raised. So most people don't think, kids particularly, think of going to the library as a place to play. The courts do not take that subjective consideration. When we looked at Bob v. Springfield, the Illinois Supreme Court specifically looked at the statute and says, this is a plain language statute. The analysis is, is the property intended or permitted to be used for recreational purposes? So how is a library more like a gymnasium and less like a school? Well, I think it's instructed a little further. The Illinois Apollo Court in Kaiser v. Village of Warren says, it doesn't have to be a gym. It doesn't have to be a sports activity. We don't have to have kids running and dogs playing in grass, as counsel suggests. What you need to have is some component of diversion and activity. For example, Kaiser, they said it doesn't limit it to sport activity. It can include intended activity that is used for passive activities, such as relaxation, enjoyment. This is not a school where, by law, students are required to attend and meet certain standards and all the activities that they're subjected to or invited to participate in are required by law. This is a public place for the entire community. Why shouldn't that be a question of fact? And rather than a judge to make that decision, on a summary judgment, why shouldn't we let somebody else decide that, based upon the various factors that you're discussing? The only evidence presented on this issue in this case is from Megan Millen. It's her testimony. She's the director of the library. And the only evidence before the trial court and before this court now is that it's a place for all ages. It's not just studying. It's books. It's movies. It's videos. They have reading programs where they can read stories to people who are interested in listening. They have activities in the parking lot. They have fruit sales. They have fests in the winter. And the Daly Center has the farmer's market. And in the cooler weather, they've got music inside every day. But every day, they invite people in to be entertained. And recreational? That's correct. That occurs here. But if you look at the case law, there was a case in which the public court had to consider, well, we've got something happening outside the lawn of the courthouse here. And they said, okay, again, let's look at the analysis. And the standard is, is the property intended or permitted as a whole to be used for recreational purposes? But that's the question, as a whole. And you can't look at just one or two factors. It seems to me that it's a question of fact that needs to be decided rather than a summary judgment. I don't know how you could do that as somebody who takes the plunge. I think because the evidence in this case supports but one conclusion, Your Honor, and that is that the entire library, that premises, is used for recreational purposes. There's no compulsory education. If you take that, that's going to expand the meaning of recreation. Well, I disagree. Doesn't the dailies in here become a recreational building? Well, it's not. You have to be cautious. And I think that only Supreme Court above cautions on this because this is what happens. We morph into doing two things. One, subjectively looking at what was the plan at the time of injury. Not a consideration. The other one is kind of what, Your Honor, you're considering, which is, well, at the time, this is what was happening. Doesn't that take away its recreational purpose? No. The court is very particular on this issue. And it says, again, we're looking at the property as a whole. And as a whole, the evidence in this case shows pure recreation. And there was no evidence raised to dispute that fact. I think you said you, you, you, you. You've got to go too much and say sole recreation. I mean, you're saying no educational, no cultural. You're, you're, you're limiting it. You're saying it's solely recreational. So if you don't find it solely educational, then maybe there is a question of pay. But there, there's no provision under the law that, that something that is educational cannot be recreational. And, again, that's what the court is avoiding. But you just said solely recreational. Well, because in this case, the facts that we find are people can go to the library to sit. If they want to fall asleep in a chair, they can do that. It's relaxation. It's music. It's videos. It's reading. Are all libraries recreational? Your Honor, in this particular case, this library is. The evidence before this court is that it is a recreational property. So, so we do have to do it on a case-by-case basis, correct? Certainly, whatever the public property is before the court, whatever the evidence and facts of record are is what the court has to look at. But when it's looking at those facts, again, the Supreme Court warns that it is an examination of the entire property as a whole. Not just what was occurring at that time. But the primary purpose for that library, it's a place where they have books and where people go to read, isn't it? Absolutely. And reading, as long as I've known, is enjoyment. It's recreational. There's no compulsory requirement to go and read. Nobody is required to go to the library. Nobody is required to read certain things at the library. This is not akin to a school. So when we look at the character of the building. As a whole. Right. What conclusion do you maintain we should come to? The character as a whole, when you said the primary purpose is reading. Well, the purpose is what the testimony shows in this case, which is what Ms. Millman testified to. It's a multipurpose building for enjoyment of the entire community. It services anybody who wishes to come there to enjoy their books, to enjoy the movies, to enjoy the music, to enjoy all of the cultural elements that they provide. It sounds like you would advocate a definition of recreational as any building where people can go for enjoyment that they're not required to go. I would disagree to the extent that what we're advocating is the analysis that the Illinois courts, and particularly the Illinois Supreme Court endorses in these types of cases, which is this property in this case, this public entity, what as a whole is its intended purpose. It's a Flossmoor library from any other library. I mean, Ms. Millman's testimony doesn't say this is a unique library among public libraries. They're all the same. And so if we were to rule in favor of a Flossmoor library in this case, that would mean all libraries are recreational properties. Well, certainly, Your Honor, I think a decision in this case finding that 3-106 applies to the Flossmoor library would certainly be endorsed by another library in another case. To some extent, it becomes precedential law. However, again, it's not so much a concern of is this type of building, is this entity always going to have the protection of a 3-106 immunity. The question, again, is we're here on motion for summary judgment, and is the 3-106 section of the Immunity Act going to apply? How are we going to decide that? We're going to follow the law and look at this definition, this analysis of is the property intended or permitted to be used for recreational purposes. And it's not as – So you're centering on that. And what we're saying is it's also educational, it's cultural, and other activities that go on in that bed of learning. Now, you're equating everything with recreation. And to me, this follows up every building in the city. Again – As long as they have a meeting at a building in the library of the Daly Center, if they have meetings up there and they show movies up there, then you would say that's recreation. But under the analysis, I don't think how the law would look at it. You have to look at the whole. As a whole, is it intended or permitted? And here, as a whole, it was intended and permitted for recreational use. That's the only – that's it. The testimony in this case is yes. And how do we know that? Because of the types of activities that occurred there. Videos and everything. Voluntary and available to the entire community. Well, videos – The fact that – That's not necessarily recreation. It's educational, it's cultural. So again, we need to look at the whole. Right, but there's no instruction under the Illinois law providing that the fact that you can learn something or that it's also educational to be reading a book. That when you're enjoying music at the library or sitting and relaxing and using one of the community rooms to talk to other members of the community, that just because there's an educational component to that doesn't eviscerate the 3-106 application. You have to go back and look at the analysis, take out the subjective component of what the plaintiff was doing at the time. The fact that A, one – for example, I think you used the Daily Center, that if they showed a movie on the 30th floor, would that change the nature of the property and suddenly its recreational nature? No, because when the court looked at a courthouse before and examined, does this – I think it was a musical event that was out on the lawn. Does that now make it recreational? And they said no, because when we look, again, in big picture, at the courthouse and what it does, it's a place of business. We conduct hearings, et cetera. It wasn't a determination that this particular courthouse wasn't a place of recreation based on the testimony. It's based on what the court knows about the function of a public building. And so it's a little bit anomalous to me that you say the function of a library is primarily recreation.  The only testimony provided regarding this building, what happened at this building and what this building was used for, showed that persons would go there to enjoy the facility and the premises. No, but we have more. The statute itself talks about parks, gyms, so on and so on. Those are not – none of those words are in the statute, seem to me to be anything related to a library. It's the library of a building. But they're different than those specific listed items. So you're, Donald, saying, well, okay, well, now we're going to add libraries to that list. And if we do it here, it seems to me that that becomes something down the road that libraries are recreational based upon this decision on your record. Well, I think actually the trend in the law – and, again, I'm going to resort back to Bub versus City of Springfield because it's our only Supreme Court kind of reviewing this section of the Tort Immunity Act. You know, they did expand it. And the arguments have been made over the years, well, you know, this particular public entity or this type of property isn't in the statute. Well, it's not all inclusive. We find it appropriate that other public entities not named by – specifically in 3-106 are going to be inclusive. And guess what? Going back to Sesame Street, what is different in this one than the others? I mean, that's the question. It is the question, Your Honor. And what you need to do is look at the evidence of record in making that decision under the legal analysis that's provided under the law. And the Illinois Appellate Court and the Illinois Supreme Court have said it's not just parks anymore. It's not just gymnasiums. It's convention centers. It's other public properties. So no reasonable finder of fact could listen to Ms. Millen's testimony and say, library isn't a place of recreation. And that's what you have to show to get somebody to judge you, right? I disagree. I believe that that testimony establishes that what the building was intended and permitted to be used for were activities that were recreational in nature. And, again, just because somebody can also have an opportunity to learn during the course of reading a book, listening to music, speaking to their child or some other member of the community doesn't take away that protection as a recreational property under 3-106. And beyond just now that it's inclusive of other buildings, it also includes those sections of the property that are integral to the use of those buildings. So, for example, the ditch. My apologies. I think it's Conaway v. Hanover Park District. There's a ditch around the city park. The ditch is not intended to be used specifically for recreation. It's there to catch runoff water from the property. But the appellate court said it is, in fact, a recreational property. And even though this section was not used at the time of as recreational and it was not intended to be used as recreational, it's an integral component for the use of the recreational property. And that's what we have here. There's no dispute in this evidentiary record that the vaults are present immediately outside in the heart of the building. There is testimony that they circulate air, which is necessary for the use of the building itself. The issue as to whether or not the plaintiff was using it, there's some time spent in the brief that, well, he's just standing there. He's not reading a book. He's not using the library to listen to music, et cetera. And, again, it's not a subjective standard. They're not going to look at what does the claimant say that they're doing at the time because that would always create a question of fact. So you wanted to address notice as well. Yes. I think the trial court was astute when it had to come back and look at a motion for reconsideration and this motion to amend and looking at the evidence as to notice. Notice applies whether it's willful and wanton or negligence. And in this case, the testimony is clear and, again, undisputed, which is important. Three persons from the library, Megan Millen, the director, walked this property at least three times a week during normal months. She said, like, February and March when the weather was worse, once a week. She would specifically observe the grates. At no time did she find the grates to be dislodged, not flush, or unstable. Did she keep records of her inspection? There are no written records of that inspection. So the answer is no, she did not keep records. That's correct. She did not keep a record, but she orally testified under oath that she did this on a regular basis, and no person has contributed that testimony. Same thing with the maintenance man, Mr. Fiorenzo. He would walk the property regularly. He said he did it several times a week. He would specifically look at it. He hadn't been there for months before the accident. I'm so sorry. He hadn't been there for months before the accident. Again, Mr. Fiorenzo was not the only person walking the property. Ms. Milne, as I just indicated, testified that she regularly walked the property and observed the grates. Likewise, Joseph Veal. He's the security monitor. Twice in his shift, which is this evening's shift, the same time period when this incident occurred, he would walk the property and specifically look at it. Never, again, none of the witnesses testified that they found it dismantled, in an unflushed position, wobbly. Mr. Veal testified he personally walked on the grates, never found it to be out of order in a position or misaligned. Likewise for Mr. Fiorenzo, actually walked. The court recognized that, and I direct to you, Justice Mason, because in one of the earlier arguments you commented, well, Mr. Fiorenzo, yeah, he said that the flanges were bent. I would ask you to revisit his testimony, and you'll specifically see that he testified he has no recollection of seeing bent flanges prior to the date of this incident. There's also this implication that the library created bent flanges, or that the library left the grate in an unsafe or unstable position. All of the testimony is that when Mr. Fiorenzo moved the grates, and it's a single grate, when he moved that grate, which is intended to be moved, it's intentionally not tack-welded. When he moved the grate, he always placed it back, he looked at it, and it was in a flush position. That is the only testimony, and there is no testimony indicating that the library did anything to create or cause a condition. There's also implications in the briefs, well, their acts modified or altered the condition of the grates. Again, no such testimony exists. There was no evidence before the court. And when the court was asked to re-examine its entry in summary judgment and look at, do we want to reconsider this, and should we add Wilfo and Wanton, it recognized that anything you're trying to bring before the trial court now is not going to make a difference, because all of the evidence before the court is not establishing notice, which is necessary for Wilfo and Wanton in both negligence, and it's also not supporting the claims that the library did something or contributed to cause something to happen. No evidence of bent flanges prior to the date of this incident. Even the absence of 191 affidavit, and without any indication to the court why they were now bringing an expert affidavit with their motion to reconsider, even that affidavit doesn't state that the library did something to cause bent flanges or that it was in a position that was unstable. We think that the court took a very comprehensive approach to the summary judgment. It looked at all the evidence carefully on two occasions. It cautiously looked at all of the case law on 3-106, 3-102, 3-104, and it made the examination that was appropriate as to looking at the property as a whole. We would ask that this court please affirm the entry of summary judgment and affirm the trial court's denial of the motion for reconsideration, as well as the motion to amend. Thank you, Ms. Stein. Thank you. Mr. Rogers, do you have some brief rebuttal? If I could begin with addressing counsel's comments on the jurisdictional issue. I'd first point out that counsel respectfully filed a response brief late and there was no provision under the rules for filing a response brief late, but for this court granting that they would have no argument in opposition to our appellate brief at all. It's not jurisdictional. I understand it's not jurisdictional, but it was sort of odd that they filed a motion seeking leave to file their response brief late and then argued in the brief the importance of timeliness. It just seemed to be a bit of a contradiction, although I do understand the distinction with regard to jurisdiction. And I did want to just again highlight People v. Brown. In People v. Brown, the appellate court actually dismissed the appeal because of the untimely filed notice of appeal that was not accompanied by a motion for leave to file a late notice of appeal. And the appellate court was reversed with, again, the Supreme Court deeming that to be form over substance, where the substantive nature of the notice of appeal that was filed was not really challenged. So that rule would be different for civil cases as opposed to criminal cases? I don't think so. They didn't discuss civil. I understand that, but they didn't make a distinction either with regard to criminal cases. There's a separate criminal rule that allows the appellate court to grant a late notice of appeal filed within six months of the due date. But that had not occurred in that case, I guess, is the analogy I'm making. But, again... Right, but there's no comparable civil provision that says an appellate court can overlook the failure to file a timely notice of appeal and file a motion for leave to file a late notice of appeal within 30 days. There's no comparable rule as there is in the criminal procedure. That's accurate. I found none. And I do conceive that's a criminal case. What I'm saying is the Supreme Court looked at the substantive nature of the issues and did not deem the failure to file a motion seeking leave to file as formality over substance. And it was not filed, as I understand that case, even within the six months allowed in the criminal setting. So this is analogous to that. And, again, it was a one-page motion seeking leave to file the late notice of appeal. And, quite frankly, we wouldn't know until we were alerted to the fact that it was untimely. We were not alerted to the fact that it was untimely until the defendants filed their motion. They filed it on the 17th. We received it on January 20th. And on January 20th, we filed our motion to amend. Our motion to amend noted the fact that on December 21st, we filed the notice of appeal. On December 21st, we filed it with the circuit court. We filed it with the appellate court. We served it upon the defendants. We thereafter established a docketing order and did all the things necessary to perfect and pursue an appeal. The defendants then sat back and waited, quite frankly, until after the second 30-day period. While having our notice of appeal, so that no motion was filed. And as soon as we were alerted, we acted expeditiously to seek whatever leave we could seek, which was through our motion to amend. So in the other cases, the distinction from this case is that the error became apparent. The error became apparent from the plaintiff's lawyers, typically. In this case, as soon as it became apparent, we acted. The court looked at how quickly you responded once you became aware of the error. And again, I think if you look at our motion to amend, we acted timely and expeditiously as soon as we became aware. Counsel commented that we did not file a motion for leave to amend. Within our motion to amend, we incorporated expressly and specifically a motion for leave to file a late notice of appeal. So that's Exhibit H of our motion to amend. And we asked that that be incorporated. That motion was granted. I can only perceive the court's ruling to incorporate that. It didn't give me any further instruction. So again, it was a one-page motion for leave to amend. We think the case law supports it being form over substance. Secondly, I wanted to mention that with respect to the Village of Flossmoor's argument that 3-102 requires some notice, I wanted to cite to the court the case of hurting the City of Highland Park, 228 Allap Third at 561. In that case, the plaintiff stepped on a water meter lid that was not properly secured over a water pit and was injured. Section 3-102 was raised as a defense, arguing the issue of notice, and the court expressly stated that Section 3-102 did not apply where there was evidence that the dangerous condition was created by the employee. Here again, we have evidence that Mr. Fiorenza had exclusive control by his own admission. We have evidence of the steps you have to take to move this grate, and we have no evidence that anyone other than him ever removed the grate. A jury could hear that evidence and hear his testimony that he believed it to be flesh and find that he was in error. He need not admit that he improperly positioned the grate. The evidence based upon what he would do, how he would do it, and that he solely was the person to reposition the grate would be sufficient to reach a conclusion. He also again acknowledged that the only way this grate would fall is if it was malpositioned, that accompanied with his testimony that he was the only one to adjust and reposition it, we think is sufficient to go to a jury. This court pointed out that the statute itself specifically identifies types of properties like parks, playgrounds, and recreational facilities as those that 3-106 applies to. And I think aptly the court pointed to properties like the Daily Center. Clearly not recreational properties, but they do have activities outside of the Daily Center, including dancing. That doesn't convert the property to recreational property. And to the extent that argument is made, it at least should go before a jury for a jury to decide. Finally, counsel talked about other evidence. There's evidence in the record from the boys who were involved, including Sellers Vines, that it was their practice to go to this library to do their homework and to study. That is the testimony about how this particular premises, this library, was being used. Mr. Fiorello even talked about he would go around and look to make sure they were doing homework. So it's clear that this is a library. It's not a recreational facility. It's a library. And more importantly, a grate over a ventilation valve outside the library is not integral to its use. When this problem occurred, they removed the grates, all of the grates, and put boards there, and the library still functioned. So how could you possibly argue that the grate was integral to use of the property? And I think the questions that were raised to counsel for the library about other properties and the fact that something recreational might occur there is the exact type of absurd result that the courts have cautioned. And I point to Batson v. Pinckneyville at 294.837. The court talked about reaching absurd results when you extend this immunity to different types of properties and even further to appendices and other things contiguous to those properties, like sidewalks and so forth. So respectfully, thank you for your time, Your Honors. We respectfully request that the circuit court and trial court opinion granting summary judgment for the Village of Flossmoor and the Flossmoor Library be reversed on all grounds. Thank you, Mr. Rogers. Thank you. Okay. I would like to thank and compliment Mr. Rogers, Mr. Yambert, and Ms. Downs for your arguments, especially you, Mr. Yambert. You tried to stay within the parameters of the time you set up. I would also like to compliment the attorneys on their briefs. This case will be taken under advisement, and this court stands at recess.